UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br>           Plaintiff,<br>    v.<br>MILTON MENDOZA,<br>           Defendant. | Case No. 18-cr-00282-HSG-1<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION AND DENYING DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 22, 51 |

Defendant Milton Mendoza ("Mendoza") moves to dismiss the indictment charging him with being in the United States after deportation in violation of 8 U.S.C. § 1326. Dkt. No. 22 ("Mot."). Because the basis of the Court's order on January 24, 2019, Dkt. No. 46, is now foreclosed by Ninth Circuit precedent, and because all of Mendoza's collateral attacks on the underlying removal order fail, the Court **GRANTS** the motion for reconsideration and **DENIES** the motion to dismiss.

## I. BACKGROUND

### A. Procedural History

Mendoza filed his motion to dismiss on October 19, 2018. The government filed its opposition on November 2, 2018, Dkt. No. 27 ("Opp."), and Mendoza filed his reply on November 16, 2018, Dkt. No. 32 ("Reply"). The Court held a hearing on that motion on December 4, 2018. *See* Dkt. Nos. 22, 40. On January 24, 2019, the Court granted the motion to dismiss based on the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), and held that the Notice to Appear ("NTA") in the underlying deportation proceeding was invalid and deprived the immigration court of jurisdiction over his case. Dkt. No. 46. Because the Court found that the underlying order of removal was void, it concluded that the indictment had to be

dismissed. *Id.* Since that issue was dispositive, the Court did not reach Mendoza's other arguments.

The government then moved for the Court to reconsider its ruling, based on the Ninth Circuit's holding in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). Dkt. Nos. 47, 51. The Court held a status conference on February 25, 2019, at which time the Court granted the government's motion for reconsideration. Dkt. No. 57. At the status conference, the Court also confirmed that it would resolve the alternative arguments raised in Mendoza's motion to dismiss. *See id.*

### B. Factual History

The Court repeats the relevant facts below from its January 24, 2019 Order. *See* Dkt. No. 46. Mendoza is a Mexican citizen who first came to the United States in 1991. Dkt. No. 22-2, Ex. 1 at 5; Ex. 4 at MM-00173, 182. On May 11, 2004, the INS issued a NTA alleging that Mendoza had unlawfully entered the United States and thus was subject to removal. Dkt. No. 27-2. The NTA was served on Mendoza in person and stated that Mendoza was in immigration custody. *Id.* The NTA ordered Mendoza to appear before an immigration judge at an address "[t]o be set," and "on a date to be set at a time to be set." *Id.*

On May 14, 2004, the immigration court issued a Notice of Hearing, which stated that a hearing would be held at the immigration court in Eloy, Arizona, at 1:00 p.m. on May 20, 2004. Dkt. No. 27-3 at MM-00185. On May 20, 2004, Mendoza appeared before an immigration judge in Eloy, Arizona, for a two-part removal hearing. Dkt. No. 27-4. The parties provided an audio recording from the hearing. Dkt. No. 22-1 ¶ 3; Dkt. No. 22-2, Ex. 2. First, the immigration judge spoke to the group of people facing removal. *Id.* Then, the immigration judge conducted Mendoza's individual removal hearing. *Id.* Mendoza was ordered removed to Mexico and was deported. Dkt. No. 22-1, Ex. 4 at MM-00180.

Mendoza subsequently re-entered the United States and was removed again based on reinstatement of the 2004 removal order twice in 2008, Dkt. Nos. 27-6, 27-12, once in 2010, Dkt. Nos. 27-1, 27-7, 27-12, and at least twice in 2013, Dkt. Nos. 27-8, 27-9. Mendoza re-entered the United States at some point after his last 2013 removal, and was indicted for illegal re-entry on

June 26, 2018. Dkt. No. 1 at 3–4.

## II. LEGAL STANDARD

A defendant may move to dismiss an indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) on the ground that the indictment "fail[s] to state an offense." "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id*. A motion to dismiss an indictment is "capable of determination before trial if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (internal quotation marks omitted).

## III. DISCUSSION

Under § 1326, an individual who has been "denied admission, excluded, deported, or removed" from the United States and thereafter "enters, attempts to enter, or is any time found in, the United States" shall be fined or imprisoned. 8 U.S.C. § 1326(a). A defendant charged with violating § 1326 may challenge the validity of the underlying deportation order. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). To bring a successful collateral attack on an underlying deportation order, a defendant must prove that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015) (citing 8 U.S.C. § 1326(d)). "An underlying removal order is fundamentally unfair if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (quotations and citations omitted).

Mendoza moves to dismiss his § 1326 indictment based on his contention that his underlying removal order in 2004 is invalid and therefore cannot satisfy the prior-deportation

3

element of § 1326. Mot. at 1. Mendoza challenges his 2004 removal order based on two theories: (1) under *Pereira*, the NTA was deficient and jurisdictionally void; and (2) the immigration judge denied him due process by failing to meaningfully inform him that he was eligible for relief from deportation.

### A. The NTA Conferred Jurisdiction on the Immigration Judge

Mendoza relies on the Supreme Court's decision in *Pereira v. Sessions* to argue that because the NTA "did not include the time, date and location of his removal hearing," it did not meet the definition of a "notice to appear" and the immigration court did not have jurisdiction to issue the 2004 removal order. Mot. at 4–6.

In *Pereira*, the Supreme Court held that an NTA that fails to specify the time or date of removal proceedings does not trigger the stop-time rule under 8 U.S.C. § 1229(d)(1)(A). *See* 138 S. Ct. at 2213–14. While the narrow question at issue in *Pereira* was whether an NTA lacking this information triggered specifically the stop-time rule, the Supreme Court appeared to go further by stating that such an NTA "is not a notice to appear under section 1229(a)" at all. *Id.* Based on this language, this Court found that it had no power to disregard the plain language of the Supreme Court holding, notwithstanding its doubt that the Supreme Court had the circumstances of this case in mind in *Pereira*, and therefore dismissed the indictment on that basis. Dkt. No. 46.

However, binding precedent from the Ninth Circuit now forecloses this argument. The Ninth Circuit in *Karingithi* addressed the question of whether an immigration judge has jurisdiction when the initial NTA "does not specify the time and date of the proceedings, but later notices of hearing include that information." 913 F.3d at 1158. In answering this question in the affirmative, the Ninth Circuit held that it was the immigration regulations promulgated by the Attorney General, and not the statutory provision 8 U.S.C. § 1229(a), that govern the immigration court's jurisdiction. *Id.* at 1158–60. Under 8 C.F.R. § 1003.14, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." *Id.* at 1159 (quoting 8 C.F.R. § 1003.14(a)). Therefore, based on the regulations, the Ninth Circuit held that a "notice to appear need not include time and date information" to vest jurisdiction in the immigration judge. 913 F.3d 1158, 1160 (9th Cir. 2019).

4

The court found that "*Pereira* simply ha[d] no application here," because the Supreme Court was dealing with the question of "whether the petitioner was eligible for cancellation of removal" and did not reference the jurisdictional regulations or even mention the word "jurisdiction." *Karingithi*, 913 F.3d at 1159.

Notwithstanding the Ninth Circuit's reasoning in *Karingithi*, Mendoza argues that his NTA was still jurisdictionally invalid because it omitted the "address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." Dkt. No. 63 at 1. But Mendoza's supplemental authority does not change this Court's view that *Karingithi* forecloses Mendoza's NTA argument. As the Ninth Circuit recently confirmed, the regulation only compels the inclusion of information as to time, place and date "*where practicable*." *Deocampo v. Barr*, No. 16-72298, 2019 WL 1505297, at *1 (9th Cir. Apr. 5, 2019) (citing 8 C.F.R. § 1003.18(b)).[1] The *Deocampo* court specifically addressed the omission of address information, and noted that while *Karingithi* did not consider "'place,' 8 C.F.R. § 1003.18 lists 'place' alongside 'time' and 'date' as information that can be included 'where practicable.'" *Id.* at *1 n.3. Therefore, the Court finds Mendoza's argument that his NTA was jurisdictionally deficient because it did not include address information to be inconsistent with the reasoning of *Karingithi* and *Deocampo*.

In sum, the Court finds that the NTA was not jurisdictionally defective.

### B. The Immigration Judge Did Not Deny Mendoza Due Process

Next, Mendoza contends that the removal order was fundamentally unfair because the immigration judge failed to inform him that he was eligible for relief from deportation, specifically for adjustment of status and voluntary departure. Mot. at 11–16. To succeed on a collateral attack, Mendoza must prove that his due process rights were violated by defects in his underlying deportation proceeding, and that he suffered prejudice as a result. *See Ubaldo-Figueroa*, 364 F.3d at 1048.

An underlying deportation proceeding violates a defendant's right to due process when the

---

[1] As an unpublished Ninth Circuit decision, *Deocampo* is not precedent, but the Court considers it for its significant persuasive value as a decision directly on point. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

immigration judge "fails to give [him] any information about the existence of relief for which [he] is 'apparently eligible,'" "erroneously tells [him] that no relief is possible," or states that he is eligible for relief, "but immediately negat[es] that statement so that it is as if he was told that he did not qualify for this relief." *Gonzalez-Flores*, 804 F.3d at 926–27. Section 212 vests discretion in the Attorney General to waive the removal of an immigrant if it "would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B). But this relief is unavailable in the case of an immigrant "who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony." 8 U.S.C. § 1182(h).

Once a defendant demonstrates that his due process rights were violated during an underlying deportation proceeding, he must then establish that "he suffered prejudice as a result of the defects." *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000). To prove prejudice, a defendant seeking a discretionary form of relief "must make a 'plausible showing' that an IJ presented with all of the facts would exercise discretion in the [defendant's] favor." *Gonzalez-Flores*, 804 F.3d at 927. "[T]he defendant bears the burden of proving prejudice under § 1326(d)(3)." *Id.*

### i. Adjustment of Status

At the time of Mendoza's removal hearing in 2004, Mendoza was not eligible for adjustment of status under 8 U.S.C. § 1255(i) because he was convicted of theft in 1995. Mot. at 12. Mendoza concedes this, but alleges that he could have "sought a waiver of inadmissibility based on hardship to his wife and his four minor, United States citizen children." Mot. at 13. Therefore, Mendoza claims, the immigration judge's alleged failure to inform him of possible relief based on adjustment of status "violated his right to due process." Mot. at 14.

The Court finds this argument unavailing. First, it is undisputed that the immigration judge raised the possibility of adjustment of status with Mendoza. Mot at 3; *see* Dkt. No. 22-2, Ex. 1 at 5 ("if wife is a citizen and she filed a petition[,] you may be eligible to get status"). But Mendoza did not request a postponement of his hearing, even after the immigration judge asked if

6

he was certain he did not want to postpone. Dkt. No. 22-2, Ex. 1 at 5. The immigration judge had also earlier informed Mendoza, with the rest of the respondents facing removal, that he would ask about their family members in the United States to "determine if [they] have any relatives who can petition for [them] to become a permanent resident." *Id*. at 2. The immigration judge thus gave Mendoza information about adjustment of status, did not erroneously tell him that no relief was possible, and did not tell him that he did not qualify for relief. *See Gonzalez-Flores*, 804 F.3d at 926–27. Therefore, the Court finds that the immigration judge meaningfully informed Mendoza of the possibility of adjustment of status and did not violate his due process rights.

Second, even if there had been a due process violation, Mendoza has not shown that he suffered prejudice, as there must be a "plausible showing" that the immigration judge would have exercised his discretion in Mendoza's favor. *See id*. at 927. Establishing plausibility "requires more than establishing a mere 'possibility,'" and must be more than "merely conceivable." *Id*. Mendoza would only have been admissible for adjustment of status under § 1255(i) if he applied for and received a waiver of inadmissibility under § 1182(h). Specifically, Mendoza would have had to show that denial of the waiver would "result in extreme hardship to the applicant's citizen or lawful resident spouse, parents and children." 8 U.S.C. § 1182(h)(1)(B). The standard for "extreme hardship" is high: even in Mendoza's cited case, *United States v. Arrieta*, the court made clear that "economic hardship and the difficulty of relocating" are "typical" and not sufficient to demonstrate that family members would suffer extreme hardship from defendant's deportation. *See* 224 F.3d 1076, 1082 (9th Cir. 2000) (citing *United States v. Arce-Hernandez*, 163 F.3d 559, 564 (9th Cir. 1998)); *see also Shooshtary v. I.N.S.*, 39 F.3d 1049, 1051 (9th Cir. 1994) (waiver should be granted when there is an "extreme impact" on the family members). Mendoza's argument that he was a "mechanical engineer who provided the financial support for his family of five United States Citizens," Mot. at 13, does not distinguish this case from the "typical" one, and he has not met his burden of showing "extreme hardship" such that he would be eligible for a waiver of inadmissibility.

### ii. Voluntary Departure

Mendoza also alleges that the immigration judge deprived him of due process by not

United States District Court
Northern District of California

7

informing him that he was eligible for voluntary departure under 8 U.S.C. § 1229c(a)(1). Mot. at 14. Specifically, Mendoza takes issue with the immigration judge's failure to "advise the group of the two primary benefits that distinguished voluntary departure from a deportation," and the failure to discuss voluntary departure with Mendoza individually. Mot. at 14–16. The Court need not decide whether the immigration judge adequately informed Mendoza of his eligibility for voluntary departure because, "even if the IJ's detailed colloquy with [Mendoza] fell short of the requirements," the Court finds that Mendoza "suffered no prejudice from any such error." *See Gonzalez-Flores*, 804 F.3d at 928.

When a defendant claims apparent eligibility for voluntary departure, the Ninth Circuit applies a two-step analysis to determine whether a defendant has demonstrated prejudice from underlying due process violations. *Gonzalez-Flores*, 804 F.3d at 927. First, a court considers "the positive and negative factors an IJ would consider relevant to an exercise of discretion." *Id.* Positive factors include "long residence, close family ties to the United States, and humanitarian needs." *Id.* Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* Second, a court determines whether the defendant has carried his "burden of proving it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the [defendant's] favor." *Id.* To assess plausibility, a court focuses on whether defendants with similar circumstances have received relief. *Id.* "Establishing plausibility requires more than establishing a mere possibility," and the existence of a single case on point is insufficient to establish plausibility. *Id.*

In this case, Mendoza had both positive and negative equities, but the Court finds that his negative equities significantly outweighed the positive equities so as to make the IJ's exercise of discretion in his favor implausible. As to positive equities, at the time of his removal hearing, Mendoza had been in the United States for thirteen years (since he was eighteen), he received work authorization twice, and he had family here. Mot. at 18. However, the nature of his relationship with his wife diminishes the suggestion that he had close family ties. He filed a

8

divorce petition with his wife before the removal hearing in 2004, Dkt. No. 29 ¶ 21, and at his sentencing on March 5, 2004, he was ordered not to "harass, molest, assault, strike or disturb the peace of by any means whatsoever the victim Veronica Mendoza," his wife. Dkt. No. 27-1, Ex. 1 at MM-00899. There is minimal evidence presented about the nature of his relationship with his minor children. Further, the record reflects no humanitarian concerns that would counsel against Mendoza's deportation to Mexico. In contrast, his negative equities were significant. He had six criminal convictions, including convictions for theft, spousal battery, infliction of corporal punishment on spouse or cohabitant, and a felony conviction for receipt of stolen property. Dkt. No. 29 ¶ 2. These are crimes of violence and theft, which the Ninth Circuit has held to be significant when evaluating negative equities. *See Gonzalez-Flores*, 804 F.3d at 928.

Given his significant negative equities and minimal positive equities, the Court holds that Mendoza has failed to establish that voluntary departure was plausible. Mendoza cites a number of cases in support of his argument that defendants with significantly more negative equities received discretionary relief, but those cases fail to establish that voluntary departure was a plausible prospect here. In each of the cited cases, the defendant either benefited from significant, or even compelling, positive equities, or the negative equities were considered minimal. *See Ubaldo-Figueroa*, 364 F.3d at 1051 ("The equities in Ubaldo-Figueroa's favor are significant."); *Pallares-Galan*, 359 F.3d at 1104 ("[H]is favorable equities are substantial."); *United States v. Cuenca-Vega*, 544 F. App'x 688, 690 n.3 (9th Cir. 2013) (unpublished) (finding several positive equities and minimal negative equities, and noting that the "negative equities at the time were only the predicate conviction for possession of methamphetamine, for which he received a sentence of 60 days, and some traffic offenses. These offenses are not sufficiently serious to make it implausible that he would have been granted relief."); *United States v. Alcazar-Bustos*, 382 F. App'x 568, 570 (9th Cir. 2010) (unpublished) ("Two factors in his background, his near-lifetime residence in this country and his family members' citizenship, plainly favor pre-conclusion voluntary departure."); *United States v. Vasallo-Martinez*, 360 F. App'x 731, 733 (9th Cir. 2009) (unpublished) (Defendant "entered the United States as a young child," "lived in the United States for at least 21 years," "graduated from high school," "worked as an auto technician for 17 years,

and has owned his own automotive business."); *United States v. Reyes*, 907 F. Supp. 2d 1068, 1078 (N.D. Cal. 2012) ("The record before this Court reveals that Defendant's criminal history consists only of the predicate conviction for possession of a shortbarrel shotgun. This criminal record is not so extensive as to preclude a plausible claim for a discretionary grant of voluntary departure."). Accordingly, the cited authorities do not show that individuals with circumstances similar to Mendoza's have received voluntary departure. *See Gonzalez-Flores*, 804 F.3d at 929 (citing cases illustrating that defendant "failed to carry his burden of showing that aliens with his scant positive equities received relief").

Mendoza has failed to meet his burden of showing that it is plausible that the immigration judge would have exercised discretion to grant voluntary departure based on minimal positive equities, coupled with the presence of significant negative equities. Mendoza thus has not shown prejudice from the alleged defects in his 2004 removal proceeding, and has not demonstrated that his deportation order was "fundamentally unfair" under § 1326(d)(3). The 2004 order may serve as a predicate for the present indictment under § 1326. *See Ubaldo-Figueroa*, 364 F.3d at 1048.

## IV. CONCLUSION

Because the Court concludes that *Karingithi* forecloses the holding in the Court's January 24, 2019 Order, *see* Dkt. No. 46, the Court **GRANTS** the government's motion for reconsideration. Further, because Mendoza has not shown any basis on which the 2004 removal order must be set aside, the Court **DENIES** the motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: 4/12/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge